# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Stephen A. Yacobi, Respondent.

Appellate Case No. 2017-002324

Opinion No. 27779
Submitted February 21, 2018 – Filed March 14, 2018

## PUBLIC REPRIMAND

John S. Nichols, Disciplinary Counsel, and Kelly B.
Arnold, Assistant Disciplinary Counsel, both of
Columbia, for Office of Disciplinary Counsel.

Harvey M. Watson, III, of Ballard & Watson, Attorneys
at Law, of West Columbia, for Respondent.

**PER CURIAM:**  In this attorney disciplinary matter, respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, respondent admits misconduct and consents to
a public reprimand or a definite suspension not to exceed nine months.[1]  As a

---

[1] In 2002, respondent received a Letter of Caution, with a finding of misconduct,
citing the following Rules of Professional Conduct (RPC), Rule 407, SCACR:
Rule 1.3 (Diligence); Rule 1.4 (Communication); and Rule 1.16 (Declining or
Terminating Representation).  In 2007, he received an Admonition citing the
following Rules of Professional Conduct: Rule 1.2 (Scope of Representation and
Allocation of Authority Between Client and Lawyer); Rule 1.3 (Diligence); Rule
1.4 (Communication); Rule 5.3 (Responsibilities Regarding Nonlawyer
Assistants); and Rule 8.1 (Bar Admission and Disciplinary Matters).  Finally,
respondent received a Letter of Caution in 2012 citing Rules 8.1(b) (Bar

condition of discipline, respondent agrees to complete the Legal Ethics and Practice Program Ethics School, Trust Account School, and Law Office Management School within nine months of being disciplined. Respondent also agrees to submit his monthly bank statements, reconciliation reports, and trial balance reports for his trust accounts to the Commission on Lawyer Conduct for a period of two years after being disciplined. Finally, respondent agrees to pay the costs incurred in the investigation of this matter by ODC and the Commission on Lawyer Conduct within thirty days of being disciplined. We accept the Agreement and issue a public reprimand. The facts, as set forth in the Agreement, are as follows.

## Facts

## Matter A

On December 6, 2011, respondent was retained to represent Client A in a workers' compensation matter. Respondent maintains that on December 7, 2011, his paralegal mailed a Form 50 to the Workers' Compensation Commission; however, the Commission never received the form. Respondent further maintains his paralegal mailed a copy of the form to the Commission in February 2012. The paralegal used a certificate of mailing dated December 7, 2011 for the February 2012 mailing.

On November 6, 2012, Client A signed a settlement statement prepared by respondent which set forth gross settlement proceeds of $75,000 and deductions for attorney fees and litigation costs in the amounts of $25,000 and $197, respectively. However, respondent had waived his claim to recover the latter. The settlement statement did not include a deduction for Client A's existing debt of $4,671.63 to a litigation loan company or a deduction of $15,453.50 Client A had directed respondent pay to a car dealer for a new vehicle. Respondent did not revise the settlement statement to reflect an accurate accounting of respondent's actual disbursements from Client A's proceeds.

On November 6, 2012, respondent deposited the settlement check in the amount of $75,000 into respondent's trust account. Between November 7, 2012 and November 15, 2012, respondent wrote checks on the trust account to pay attorney

---

Admission and Disciplinary Matters) and 8.4(e) (Misconduct) of the Rules of Professional Conduct.

fees, Client A, the car dealer, and the litigation loan company.  All of the checks had cleared the trust account by November 19, 2012.  However, at the time the disbursements were made, the settlement funds were neither collected funds pursuant to Rule 1.15(f)(1), RPC, nor "good funds" pursuant to Rule 1.15(f)(2), RPC.

Respondent did not respond to a Notice of Investigation from ODC nor a subsequent *Treacy* letter,[2] and he did not appear for an interview with ODC as required by a Notice to Appear.  When contacted by ODC, respondent indicated his non-lawyer staff had not made him aware of mail or notices sent by ODC.

Respondent acknowledges he failed to supervise his non-lawyer staff and failed to make reasonable efforts to ensure the conduct of his non-lawyer staff was compatible with respondent's professional obligations.

## Matter B

In October 2013, Clients B retained respondent to represent them in a family court matter.  Clients B executed a fee agreement which provided for an attorney fee of $4,310, and which they believed covered certain legal services, including preparing, filing, and serving a complaint to initiate proceedings on their behalf.  Having heard nothing from respondent thereafter, Clients B attempted to contact respondent by telephone, email, letter, and respondent's website between November 2013 and January 2014, to no avail.

On January 7, 2014, Clients B learned nothing had been filed on their behalf with the family court; therefore, they fired respondent.  In their letter to respondent terminating his services, which was accepted by his receptionist, Clients B requested the return of the $4,310 previously paid to respondent.  Clients B retained new counsel who also tried to contact respondent without success.  Respondent recalls speaking with Mr. B in October 2013, but acknowledges there was no further contact with Clients B.  Respondent maintains his paralegal and the paralegal's daughter, who was the receptionist, intentionally deflected attempts at communication by Clients B and their successor counsel that were intended for respondent, including the deletion of emails sent directly to respondent.  Respondent has terminated those staff members.  Upon receipt of the complaint filed by Clients B, respondent contacted their new counsel and hand-delivered a full refund check on May 5, 2014.

---

[2] *See In the Matter of Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982).

Respondent admits he failed to prepare, file, or serve pleadings on behalf of Clients B in a timely manner. He also admits not initiating communication with Clients B to keep them reasonably informed as to the status of their case. Finally, he admits he failed to make reasonable efforts to ensure the conduct of his non-lawyer staff was compatible with respondent's professional obligations.

## Matter C

Respondent's bank reported he had an NSF - a check presented against insufficient funds - on his real estate trust account on June 13, 2014. Respondent maintains the check in question had been properly issued; however, there were insufficient funds in the account because a $495 deposit for the same transaction was accidentally deposited into respondent's general trust account. ODC's examination of the daily balances provided by the bank and client ledger balances indicated the real estate account was short by more than the amount of the one misdirected deposit at the time of the NSF and respondent also had multiple negative client subaccount ledgers.

On June 13, 2014, respondent deposited $468 of personal funds into the real estate account to cover the shortage created by the presented check, and any possible bank fees associated with the NSF, while respondent investigated the cause of the NSF. On July 1, 2014, he deposited $700 of personal funds to rectify the other negative client subaccount ledgers. On July 3, 2014, respondent also transferred funds from his general trust account to the real estate account to correct the misdirected deposit of $495. Respondent elected to leave any remaining personal funds in the real estate account, resulting in an impermissible commingling of respondent's personal funds with client funds.

Respondent employed a bookkeeping service to prepare monthly trust account reconciliations; however, reconciliations were not being performed each month. Respondent admits he failed to supervise his bookkeeper to ensure monthly reconciliations of his trust accounts were being performed. Respondent also admits he did not disburse checks related to real estate transactions in a timely manner, on one occasion waiting six months.

ODC has determined respondent's negative client subaccount ledgers were a result of carelessness in accounting for disbursements. Despite there being no indication of misappropriation, respondent was not reconciling the real estate trust account as

required by Rule 1.15, RPC, and was not maintaining adequate records as required by Rule 417, SCACR.

## Law

Respondent admits he violated the following Rules of Professional Conduct: Rule 1.2 (A lawyer shall consult with a client as to the means by which the objectives of representation are to be pursued.); Rule 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."); Rule 1.4(a) ("A lawyer shall: . . . (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter; [and] (4) promptly comply with reasonable requests for information[.]"); Rule 1.15(a) ("A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person . . . . Complete records of such account funds . . . shall be kept by the lawyer . . . . A lawyer shall comply with Rule 417, SCACR (Financial Recordkeeping)."); Rule 1.15(f)(1) ("A lawyer shall not disburse funds from an account containing the funds of more than one client or third person ('trust account') unless the funds to be disbursed have been deposited in the account and are collected funds."); Rule 1.16(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred."); Rule 3.2 ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."); Rule 5.3(b) ("[A] lawyer having direct supervisory authority over [a] nonlawyer . . . shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer[.]"); Rule 8.1(b) ("[A] lawyer in connection with . . . a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority[.]"); and Rule 8.4(e) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]"). Respondent also admits he violated Rule 1 of Rule 417, SCACR, by failing to maintain adequate financial records. Finally, respondent admits the allegations contained in the Agreement constitute grounds for discipline under Rule 7(a)(1), RLDE ("It shall be a ground for discipline for a lawyer to . . . violate the Rules of Professional Conduct, Rule 407, SCACR, or any other rules of this jurisdiction regarding professional conduct of lawyers[.]").

## Conclusion

We find respondent's misconduct warrants a public reprimand.  Accordingly, we accept the Agreement and publicly reprimand respondent for his misconduct. Within thirty days of the date of this opinion, respondent shall pay the costs incurred in the investigation of this matter by ODC and the Commission on Lawyer Conduct.  Respondent shall complete the Legal Ethics and Practice Program Ethics School, Trust Account School, and Law Office Management School within nine months of the date of this opinion.  Finally, respondent shall submit his monthly bank statements, reconciliation reports, and trial balance reports for his trust accounts to the Commission on Lawyer Conduct for a period of two years from the date of this opinion.

**PUBLIC REPRIMAND.**

**BEATTY, C.J., KITTREDGE, HEARN and JAMES, JJ., concur.  FEW, J., not participating.**